IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



GREAT AMERICAN INSURANCE §
COMPANY, §
 §
  Plaintiff, §
 §
VS. § NO. 4:18-CV-114-A
 §
ACE AMERICAN INSURANCE COMPANY, §
ET AL., §
 §
  Defendants. §

### MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant Eastern Concrete Materials, Inc. ("Eastern Concrete") to dismiss for lack of personal jurisdiction, or, in the alternative, to abstain in deference to competing New Jersey state action, or transfer venue to the District of New Jersey. The court, having considered the motion, the response of plaintiff, Great American Insurance Company, the reply, the record, and applicable authorities, finds that the motion should be denied.

I.

### Plaintiff's Claims

On February 9, 2018, plaintiff filed its complaint for declaratory relief against Eastern Concrete and ACE American Insurance Company ("ACE"). Doc.[1] 1. In it, plaintiff alleges: ACE issued a commercial general liability insurance policy to Eastern

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

Concrete and/or its parent company, U.S. Concrete, Inc. ("U.S. Concrete") for the policy period December 31, 2016, to December 31, 2017. Plaintiff issued a commercial umbrella insurance policy for the same period under which U.S. Concrete and certain of its subsidiaries, including Eastern Concrete, are named insureds. Eastern Concrete contends that both the ACE policy and plaintiff's policy cover or potentially cover amounts it has paid or may pay in connection with a certain pollution claim in New Jersey.

Plaintiff seeks a declaratory judgment that (1) it has no duty to defend Eastern Concrete against the New Jersey pollution claim or to pay its defense costs; (2) it has no duty to indemnify Eastern Concrete against any liability arising from or relating to the New Jersey pollution claim; and (3) to the extent that plaintiff has any potential coverage obligations to Eastern Concrete in connection with the New Jersey pollution claim, its obligations are excess to coverage provided by the ACE policy. And, plaintiff seeks a judicial determination of the rights and obligations of the parties with respect to Eastern Concrete's claims for insurance coverage in connection with the New Jersey pollution claim.

II.

## Grounds of the Motion

Eastern Concrete contends that the court lacks personal jurisdiction over it and that plaintiff's claims against it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, it asks the court either to abstain in deference to an action Eastern Concrete has filed in the Superior Court of New Jersey or to transfer venue of this action to the District of New Jersey.

III.

## Applicable Legal Principles

A. <u>Personal Jurisdiction</u>

The burden is on plaintiff to establish the court's jurisdiction over Eastern Concrete. <u>Wilson v. Belin</u>, 20 F.3d 644, 648 (5th Cir. 1994); <u>Stuart v. Spademan</u>, 772 F.2d 1185, 1192 (5th Cir. 1985). Personal jurisdiction need not be established by a preponderance of the evidence at this stage; <u>prima facie</u> evidence is sufficient. <u>Johnston v. Multidata Sys. Int'l Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008); <u>WNS, Inc. v. Farrow</u>, 884 F.2d 200, 203 (5th Cir. 1989). The court may resolve jurisdictional issues by reviewing pleadings, affidavits, exhibits, any part of the record, and any combination thereof. <u>Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.</u>, 963 F.2d 90, 95 (5th Cir.

1992). Allegations of plaintiff's complaint are taken as true except to the extent that they are contradicted by Eastern Concrete's evidence, such as affidavits. Wyatt v. Kaplan, 686 F.2d 276, 282-83 n.13 (5th Cir. 1982). Any genuine, material conflicts are resolved in favor of jurisdiction. Luv N'care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006); Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1067 (5th Cir. 1992).

In a diversity action, personal jurisdiction over a nonresident may be exercised if (1) the nonresident defendant is amenable to service of process under the law of the forum state, and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fourteenth Amendment. Wilson, 20 F.3d at 646-47. Since the Texas long-arm statute has been interpreted as extending to the limits of due process, the only inquiry is whether the exercise of jurisdiction over the nonresident defendant would be constitutionally permissible. Bullion v. Gillespie, 895 F.2d 212, 216 (5th Cir. 1990).

For due process to be satisfied, a nonresident must have minimum contacts with the forum state resulting from an affirmative act on the defendant's part and the contacts must be such that the exercise of jurisdiction over the person of the defendant does not offend traditional notions of fair play and

4

substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 425 (5th Cir. 2005). The "minimum contacts" prong of the due process requirement can be satisfied by a finding of either "specific" or "general" jurisdiction over the nonresident. Bullion, 895 F.2d at 216.

For specific jurisdiction to exist, the foreign defendant must purposefully do some act or consummate some transaction in the forum state and the cause of action must arise from or be connected with such act or transaction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Even if the controversy does not arise out of or relate to the nonresident's purposeful contacts with the forum, general jurisdiction may be exercised when the nonresident defendant's contacts with the forum are sufficiently continuous and systematic as to support the reasonable exercise of jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Perkins v Benguet Consol. Mining Co., 342 U.S. 437 (1952). When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities within the forum state. Jones, 954 F.2d at 1068. As the Supreme Court has explained, the proper consideration when determining general jurisdiction is whether the defendant's affiliations with the

state are so continuous and systematic as to render it "essentially at home" in the forum state.[2] Daimler AG v. Bauman, 571 U.S. 117, 138-39 (2014)(quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). For example, a corporation's place of incorporation and principal place of business are the places where it is at home and are thus paradigm bases for jurisdiction. Id. at 137. A corporation is not "at home" in every state where it engages in a substantial, continuous, and systematic course of business. Id. at 137-38, 139 n.20.

B.  Abstention

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other relations of any interested party seeking such declaration." Where there are parallel proceedings pending in state and federal courts, the district court has discretion to determine whether to proceed with an action for declaratory relief. Wilton v. Seven Falls, Co., 515 U.S. 277, 289-90 (1995); Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942).

---

[2]In BNSF Ry. Co. v. Tyrrell, the Supreme Court made clear that the Daimler test "applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued." 137 S. Ct. 1549, 1559 (2017).

The Fifth Circuit uses the factors set out in <u>St. Paul Ins. Co. v. Trejo</u>, 39 F.3d 585 (1994), to guide the court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit. <u>Sherwin-Williams Co. v. Homes Cty.</u>, 343 F.3d 383, 390 (5th Cir. 2003). The factors are:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses[,] 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, and [(7] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

<u>Trejo</u>, 39 F.3d at 590-91. The <u>Trejo</u> factors address three categories of issues: the proper allocation of decision-making between state and federal courts, fairness, and efficiency. <u>Sherwin-Williams</u>, 343 F.3d at 390.

C.  <u>Transfer of Venue</u>

The pertinent statute provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). Whether a motion to transfer venue should be granted lies within the court's sound discretion. Time Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966).

The court considers both public and private factors in determining whether a transfer should be ordered. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or application of foreign law. Id.

The burden rests on the moving party to show that the initial choice of forum should be disturbed. TIG Ins. Co. v. NAFCO Ins. Co., Ltd., 177 F. Supp. 2d 561, 568 (N.D. Tex. 2001). The moving party must make a particularized showing why transfer is necessary and the court may not transfer a case where the result is merely to shift the inconvenience of venue from one

party to the other. Id.; Fowler v Broussard, No. 3:00-CV-1878-D, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001).

IV.

Analysis

A.  Personal Jurisdiction

Eastern Concrete says that plaintiff has failed to allege that it has sufficient contacts with Texas to establish either general or specific jurisdiction over it. Plaintiff responds that the court has both general and specific jurisdiction.

As to general jurisdiction, plaintiff contends that Eastern Concrete is "at home" in Texas. Plaintiff has pleaded that three of Eastern Concrete's officers and directors--President Ronnie Pruitt, Secretary Paul M. Jolas, and Director Kevin R. Kohutek--maintain offices and regularly do business in the State of Texas, at 331 North Main Street, Euless. Doc. 1 at ¶ 18. Further, plaintiff argues that U.S. Concrete, which is a Texas citizen, may be considered the alter ego of Eastern Concrete. Doc. 32 at 8-10. The court need not decide whether general jurisdiction exists, because it is apparent that specific jurisdiction does.

With regard to specific jurisdiction, plaintiff alleges that Eastern Concrete has minimum contacts with Texas and that the cause of action arises out of such contacts. Specifically, Eastern Concrete engaged, or authorized its parent company, U.S.

9

Concrete, to engage on its behalf, McGriff, Seibels & Williams of Texas, Inc., an insurance agency licensed by and operating in Texas, ("broker") to procure insurance on its behalf. Doc. 1 at ¶ 20. Broker procured a policy issued by plaintiff in Texas. The policy gives the address of the first-named insured, U.S. Concrete, as 331 North Main Street, Euless, Texas. Doc. 33 at PA 0013. The policy contains a "Forms and Endorsement Schedule" enumerating 46 endorsements, every one of which lists Texas as the relevant state. Id. at PA 0018-20. At least three of the endorsements are specifically tailored for Texas and no endorsement refers to any other state. Id. at PA 0066-67, 72, 83. The policy notifies the insureds that they may contact the Texas Department of Insurance to complain or seek information. Id. at PA 0011. And, Eastern Concrete, or U.S. Concrete acting on its behalf, contacted Broker for assistance in seeking coverage under the policy for the New Jersey pollution claim. Doc. 1 at ¶ 20.

In sum, the insurance policy was negotiated, brokered, and issued in Texas and this action solely concerns interpretation of that policy. Although Eastern Concrete argues that it is a mere passive beneficiary of the policy by being named an insured, a corporation can purposely avail itself of the benefits of a forum through its agents. Daimler AG, 571 U.S. at 135 n.13. Here, plaintiff plausibly posits that the insurance was procured on

10

behalf of Eastern Concrete by or through its president or secretary or both, acting in Texas. Doc. 32 at 13. And, as in W.R. Grace & Co. v. Continental Cas. Co., 896 F.2d 865 (5th Cir. 1990), and St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F.3d 202 (5th Cir. 1996), the substantive issue is the construction and application of the policy issued by plaintiff. Thus, the relevant inquiry is the contacts of the state with the insurance dispute, not the underlying pollution suit. Id. Clearly, the insurance dispute is centered here. See Reddy Ice Corp. v. Travelers Lloyds Ins. Co., 145 S.W.3d 337 (Tex. App.-- Houston [14th Dist.] 2004, pet. denied).

B.  Abstention

Eastern Concrete contends that the court should abstain from making the declarations requested by plaintiff, because the proper decision-maker is the New Jersey state court adjudicating the pollution suit. Doc. 24 at 16. The first Trejo factor is whether all matters in controversy may be fully litigated in the New Jersey state court action. Although it appears that the declarations sought here could be made by the New Jersey court, comity and efficiency do not appear to weigh in favor of deferring to the state court. The matters at issue in this action are questions of Texas state law. There is no reason to believe that a New Jersey court would be in a better position to decide

such issues. Moreover, there is no indication that the New Jersey court could do so more expeditiously than this court. The seventh Trejo factor plays no role here, as there is not a state judicial decree to be construed.

The next three Trejo factors weigh into the consideration of whether plaintiff is using the declaratory process to gain access to a federal forum on improper or unfair grounds. Sherwin-Williams, 343 F.3d at 391. Here, Texas is a proper forum and plaintiff has not gained any undue advantage by filing this action first. As noted, Texas law will govern interpretation of the insurance contract.

Finally, efficiency considerations are taken into account by the fifth and sixth Trejo factors. Sherwin-Williams, 343 F.3d at 392. The forum here is convenient to the parties and witnesses. As plaintiff notes, Eastern Concrete's president and secretary are here, as is the insurance broker. See TIG Ins. Co. v. Sedgwick James of Washington, 184 F. Supp. 2d 591, 601 (S.D. Tex. 2001), aff'd, 276 F.3d 754 (5th Cir. 2002); W.R. Grace, 896 F.2d at 873. As for the sixth factor, retaining the suit here would serve the purposes of judicial economy by resolving matters that play no role in the underlying pollution suit.

C. <u>Transfer</u>

Finally, Eastern Concrete argues that this action should be transferred to the District of New Jersey. Having considered the private and public factors, the court is not persuaded that transfer would be appropriate. Court congestion is not a factor that weighs in favor of transfer. At best, Eastern Concrete simply notes that the District of New Jersey has an even higher number of pending cases than does the Northern District of Texas. It fails to note that the docket of the undersigned is not congested. The local interest in having cases decided at home favors Texas as to the declarations sought. The court is familiar with Texas law that will govern; a New Jersey court would not be as familiar. It does not appear that conflict of laws will play any role in the decision. The relative ease of access to sources of proof favors Texas in that Eastern Concrete's president and secretary are here, as is the insurance broker. Compulsory process is available if necessary to compel attendance by the broker. Eastern Concrete has not shown that any New Jersey witnesses are necessary to a determination of this action. Rather, those witnesses are pertinent to the pollution claim being tried in New Jersey. And, there are no other practical problems that make federal court in New Jersey a better proposition. In sum, transfer of this action to federal court in

13

New Jersey is not in the interest of justice. Rather, it would merely shift the inconvenience of venue from one party to the other. TIG Ins. Co., 177 F. Supp. 2d at 568.

V.

Order

The court ORDERS that Eastern Concrete's motion to dismiss or, in the alternative, to abstain or transfer be, and is hereby, denied.

SIGNED April 20, 2018.

_____
JOHN McBRYDE
United States District Judge