IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| VS. | § | NO. 4:18-CV-114-A |
| ACE AMERICAN INSURANCE COMPANY, ET AL., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of plaintiff, Great American Insurance Company, for summary judgment against defendant Eastern Concrete Materials, Inc. ("Eastern"). The court, having considered the motion, Eastern's response, the reply, the summary judgment evidence, the record, and applicable authorities, finds that the motion should be granted.

I.

### Plaintiff's Claims

As recited in the court's memorandum opinion and order of April 20, 2018, plaintiff filed its complaint for declaratory relief against Eastern and ACE American Insurance Company ("ACE") on February 9, 2018. Doc.[1] 39. Plaintiff alleges: ACE issued a commercial general liability insurance policy to Eastern and/or its parent company, U.S. Concrete, Inc. ("U.S. Concrete") for the

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

policy period December 31, 2016, to December 31, 2017. Plaintiff issued a commercial umbrella insurance policy, No. TUU 2-53-45-62-18, (the "policy") for the same period under which U.S. Concrete and certain of its subsidiaries, including Eastern, are named insureds. Eastern contends that both the ACE policy and plaintiff's policy cover or potentially cover amounts it has paid or may pay in connection with a certain New Jersey pollution claim arising out of the discharge of rock fines into the Spruce Run (as further described herein).

With regard to Eastern, plaintiff seeks a declaratory judgment that (1) it has no duty to defend Eastern against the New Jersey pollution claim or to pay its defense costs; (2) it has no duty to indemnify Eastern against any liability arising from or relating to the New Jersey pollution claim; and (3) to the extent that plaintiff has any potential coverage obligations to Eastern in connection with the New Jersey pollution claim, its obligations are excess to coverage provided by the ACE policy. And, plaintiff seeks a judicial determination of the rights and obligations of the parties with respect to Eastern's claims for insurance coverage in connection with the New Jersey pollution claim.

II.

Grounds of the Motion

Plaintiff says that it is entitled to judgment as a matter of law because the absolute pollution exclusion provision of its policy bars coverage for the New Jersey pollution claim. For the same reason, plaintiff does not, and will not, have any defense or payment obligations to Eastern. Further, Eastern cannot prevail on its counterclaims.[2]

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

---

[2] Plaintiff notes that granting its motion for summary judgment will make moot its claims against ACE. Doc. 46 at 2, n.2.

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[3] Celotex Corp., 477 U.S. at 323. If the record taken as a

---

[3]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
(continued...)

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Facts Established by Summary Judgment Evidence

Eastern is a wholly-owned subsidiary of U.S. Concrete, a holding company with its principal place of business in the Northern District of Texas. Doc. 47 at PA 112, PA 172, PA 254. As a general rule, U.S. Concrete does not maintain insurance to cover environmental liabilities. Id. at PA 132.

Plaintiff's policy at issue is a commercial umbrella insurance policy issued to U.S. Concrete for the policy period December 31, 2016, to December 31, 2017. Id. at PA 011. Eastern is one of more than sixty subsidiaries named as an insured under the policy. Id. at PA 022-023. The payment and defense obligations under the policy are limited in pertinent part by an absolute pollution exclusion, which provides:

> This insurance does not apply to:
> . . .
> L. Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts,

---

[3](...continued)
explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

> or consultants, arising out of or in any way related
> to:
> > 1. The actual, alleged or threatened
> > presence, discharge, dispersal, seepage,
> > migration, release, or escape of
> > "pollutants," however caused.
> > 2. Any request, demand or order that any
> > "Insured" or others test for, monitor, clean-
> > up, remove, contain, treat, detoxify,
> > neutralize or in any way respond to or assess
> > the effects of "pollutants." . . .
> 
> . . .
> This exclusion will apply to any liability, costs,
> charges, or expenses, or any judgments or settlements
> arising directly or indirectly out of pollution whether
> or not the pollution was sudden, accidental, gradual,
> intended, expected, unexpected, preventable or not
> preventable.
> As used in this exclusion "pollutants" means any solid,
> liquid, gaseous, or thermal irritant or contaminant,
> including, but not limited to, smoke, vapor, soot,
> fumes, acids, alkalis, chemicals and waste material.
> Waste material includes materials which are intended to
> be or have been recycled, reconditioned or reclaimed.
> . . .

Id. at PA 035-036, 60.

Eastern operates a rock quarry in Glen Gardner, New Jersey, where it quarries rock and crushes the rock into small stones and fines. The rock fines are small particles of rock generated as part of the stone crushing process. The rock fines are washed off with water and placed into settling ponds. Once they are settled out, they are removed, dried out, and prepared for use as reclamation fill at the quarry or sold as fill material. Id. at PA 269.

Beginning on July 28, 2017, in anticipation of substantial rain fall, Eastern began lowering the level of its quarry water settling ponds through permitted pumping into the adjacent Spruce Run, a tributary to the Spruce Run Reservoir. The quarry manager failed to shut off the pumping before the rock fines began to be pumped into Spruce Run on July 29, 2017. As a result, substantial amounts of rock fines were pumped into Spruce Run. The pumping of rock fines into Spruce Run caused physical damage to the stream and stream bed by changing the flow and contours of the stream and filling in depressions in the stream bed. Up to two feet of rock fines were pumped into some portions of Spruce Run. As a result, the New Jersey Department of Environmental Protection Bureaus of Coastal and Land Use Compliance and Enforcement and Water Compliance and Enforcement ("New Jersey") issued notices of violation dated July 31 and August 2, 2017. Id. at PA 269. The notices of violation reflected that Eastern had violated the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., Freshwater Wetland Protection Act, N.J.S.A. 13:9B-1 and rules at N.J.A.C. 7:7A-1, and the Flood Hazard Area Control Act, N.J.S.A. 58:16A-52 et seq. and rules at N.J.A.C. 7:13-1. Id. at PA 085-086. And, according to Eastern's counsel, New Jersey also maintained that Eastern had violated the Fish and Game Act "by pumping of a deleterious substance resulting in a negative impact

7

to a trout producing stream and a documented habitat for threatened or endangered species." Id. at PA 093-094. New Jersey required Eastern to remove the rock fines to ensure protection of fish habitats that had been covered by the fines and prevent further migration of the fines. Id. at PA 269-70. Eastern admits that remediation was necessary to protect the environment. Id. at PA 339. New Jersey also said that Eastern was liable to pay the State for alleged violations of State statutes that caused, among other things, physical alteration to the channel of Spruce Run, placement of materials in a floodway, and other alleged violations arising from damage to State resources. Id. at PA 272, PA 343.

By letter dated October 24, 2017, Eastern notified plaintiff of the Spruce Run claim and demanded reimbursement for all costs to remove the rock fines and costs of defense of the claim. Id. at PA 083-084. On February 9, 2018, plaintiff filed its complaint in this action. Doc. 1. One month later, on March 9, 2018, Eastern filed a complaint in the Superior Court of New Jersey Law Division in Bergen County against plaintiff, ACE, and others seeking insurance coverage for the Spruce Run damages among other things (the "New Jersey action"). Doc. 47 at PA 264-91. Plaintiff filed a motion to dismiss or stay the New Jersey action in favor of the first-filed Texas action. Id. at PA 308-331. In response,

8

Eastern argued that the absolute pollution exclusion would not be interpreted favorably to it under Texas law. Id. at PA 361-64. It recited a host of reasons that New Jersey had a superior interest in maintaining jurisdiction and applying New Jersey law and public policy. Id. at PA 355-65. Nevertheless, the New Jersey court granted plaintiff's motion to stay the New Jersey action, noting that the rock fines had already been removed from Spruce Run and that "the health and safety of nearby New Jersey residents" was not at issue. Doc. 57, Ex. 1.

V.

Analysis

As the court previously noted in its April 20, 2018 memorandum opinion and order, the substantive issue in this case is the construction and application of the policy issued by plaintiff. St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F.3d 202 (5th Cir. 1996); W.R. Grace & Co. v. Continental Cas. Co., 896 F.2d 865 (5th Cir. 1990). Clearly, the insurance dispute is centered here. See Reddy Ice Corp. v. Travelers Lloyds Ins. Co., 145 S.W.3d 337 (Tex. App.--Houston [14th Dist.] 2004, pet. denied). And, as the court concluded, Texas law will govern interpretation of the policy.

Eastern argues that it "had no opportunity, as due process requires, to fully brief the issue" of which state's law should

apply.⁴ Doc. 55 at 16. The allegation is disingenuous at best. Eastern certainly argued in support of its motion to dismiss, abstain or transfer that New Jersey has an overwhelming interest in the dispute over the meaning of the policy. That New Jersey law should apply was implicit in its argument.⁵ Nevertheless, the court has now considered Eastern's fully-briefed argument and is not persuaded that New Jersey law should apply to interpretation of the policy.⁶

As Eastern notes, Texas follows the Restatement (Second) Conflicts of Law in determining the most significant relationship to the issue presented for determination. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 420-21 (Tex. 1984). However, the court need only perform a choice of law analysis if the laws of the states in question conflict on a disputed substantive issue. Schneider Nat'l Transport v. Ford Motor Co., 280 F.3d 532, 536 (5th Cir. 2002); Greenberg Traurig of N.Y., P.C. v. Moody, 161 S.W.3d 56, 69-70 (Tex. App.--Houston [14th Dist.] 2004, no pet.). In this regard, Eastern admits "New Jersey and Texas law are generally aligned regarding the proper rules of construction for

---

⁴Eastern also complains that the parties have not engaged in discovery on the choice of law or any other issue. Doc. 55 at 16. However, Eastern did not file a motion pursuant to Fed. R. Civ. P. 56(d).

⁵The court assumed that Eastern did not make a more explicit argument because it simply could not do so in good faith as required by Rule 11.

⁶The court notes that the New Jersey court was not so persuaded either. Doc. 57, Ex. 1.

insurance policy interpretation." Doc. 55 at 13, n.4. Accordingly, the law of the forum applies and the policy should be interpreted according to its plain meaning. Schneider, 280 F.3d at 536.

Eastern launches into a discussion of the factors considered in a choice of law analysis and argues that New Jersey law should apply. Doc. 55 at 16-19. But, it makes no effort to meet its burden of showing the existence of a true conflict of laws, the prerequisite to application of the choice of law analysis. Greenberg Traurig, 161 S.W.3d at 69-70 (citing Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 650 (Tex. App.--Houston [14th Dist.] 1995, writ dism'd w.o.j.), leave granted, mand. denied, 951 S.W.2d 394 (Tex. 1997)).

Even if a choice of law analysis was required to be made, the court is satisfied that Texas has the most significant relationship to the substantive issue to be resolved, that is, whether the absolute pollution exclusion precludes insurance coverage for the Spruce Run claim. As previously noted, the insurance policy was negotiated, brokered, and issued in Texas and this action solely concerns interpretation of that policy. Doc. 39 at 10-11. Eastern admits that its parent, U.S. Concrete, which is "at home" in Texas, purchased the policy. Doc. 55 at 17. The policy covers a group of risks that are scattered throughout

the United States. For this reason, Texas courts would not give weight to the location of the insured risk in interpreting the pollution exclusion clause. Reddy Ice Corp., 145 S.W.3d at 345 & n.11. Certainty, predictability, and uniformity of result will be obtained by application of Texas law, as will the other Restatement factors. In particular, the court notes that the "justified expectations" of U.S. Concrete, the purchaser of the policy, would be met by application of Texas law. That Eastern relies primarily on the third factor--relevant policies of other interested states and the relative interests of those states in the determination of the particular issue--is ironic, given its adamant denial that the release of the rock fines was pollution. Doc. 55 at 18-19 (citing Sensient Colors Inc. v. Allstate Ins. Co., 939 A.2d 767 (N.J. 2008)(noting New Jersey's strong interest in protecting victims of pollution); Curtis T. Bedwell and Sons, Inc. v. Geppert Bros., Inc., 655 A.2d 483 (N.J. Super. Ct. App. Div. 1995)(no interest more compelling than cleanup of hazardous substances)). And, in any event, the cleanup has already taken place. Doc. 57, Ex. 1.

In Texas, insurance policies are interpreted by the same rules of construction applicable to contracts generally. Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). The primary concern of the court is to ascertain the

intent of the parties as expressed in the policy. Id. If the policy is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. Parol evidence is not admissible for the purpose of creating ambiguity. Whether a contract is ambiguous is a question of law for the court to decide by looking at the policy as a whole in light of the circumstances present when it was entered. Id. When there is no ambiguity, the court's duty is to give the words used their plain meaning. Sharp v. State Farm Fire & Cas. Ins. Co., 115 F.3d 1258, 1261 (5th Cir. 1997).

In this case, the pollution exclusion bars coverage for any liability "arising out of or in any way related to . . . discharge, dispersal, seepage, migration, release or escape of 'pollutants,' however caused." Doc. 47 at PA 035, PA 060. "Pollutants" is defined as "any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material." Id. And, "[w]aste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed." Id. at PA 036, PA 060.

The rock fines are "small particles of rock generated as part of the stone crushing process at the quarry." Id. at PA 269, ¶ 30. They are washed off with water and placed in ponds to

settle, then "removed, dried out and prepared for use as reclamation fill" at the quarry or sold as fill material or for other undefined purposes. Id. In this case, the rock fines were pumped out of the settlement ponds causing physical damage to the Spruce Run. Id. ¶¶ 32-33. Specifically,

> the material caused physical damage to the stream and stream bed by: (a) changing the flow and contours of the stream, including areas used for trout spawning; (b) filling in portions of the stream and flood plain thereby reducing the capacity of the stream and flood plain and increasing the risk of flooding in the area, which was already a flood-prone area; and (c) physically covering the micro and macro invertebrates that serve as a food source for fish and other species.

Doc. 56 at DE 214. Or, as Eastern's counsel summarized the incident, Eastern pumped "a deleterious substance resulting in a negative impact to a trout producing stream and a documented habitat for threatened or endangered species." Doc. 47 at PA 094.

The pollution exclusion is clear, unambiguous, and absolute. Nat'l Union, 907 S.W.2d at 522. The word "pollution" is not a term of art.[7] Clarendon Am. Ins. Co. v. Bay, Inc., 10 F. Supp. 2d 736, 744 (S.D. Tex. 1998). Rather, substances can constitute pollutants regardless of their ordinary usefulness. Id. See also Nautilus Ins. Co. v. Country Oaks Apts. Ltd., 566 F.3d 452, 455 (5th Cir. 2009)(the Fifth Circuit has rejected the argument that

---

[7]Thus, the court does not need, and will not consider, expert or other testimony regarding the meaning of the definitions used in the policy. Nor is the court considering the legal conclusions posing as fact statements of Eastern's declarants.

a substance must generally or usually act as an irritant or contaminant to constitute a pollutant under the pollution exclusion). In this case, the rock fines are clearly waste material generated in the rock crushing process. That the rock fines are wanted or useful does not change their nature. See Am. States Ins. Co. v. Nethery, 79 F.3d 473, 477 (5th Cir. 1996)(numerous courts have found substances constituted pollutants regardless of their ordinariness or usefulness). They are materials intended to be reclaimed within the meaning of "waste material" as defined in the policy. In addition, they are solids. They became irritants or contaminants when they were discharged and dispersed where they did not belong.[8] Id. at 743-44; Penn. Nat'l Mut. Cas. Ins. Co. v. Triangle Paving, Inc., 973 F. Supp. 560 (E.D.N.C. 1996); Ortega Rock Quarry v. Golden Eagle Ins. Corp., 46 Cal. Rptr. 3d 517 (Cal. Ct. App. 2006). If they were indeed innocuous, the State of New Jersey would not have required remediation. See State of N.J. Dep't of Envtl. Prot. v. Arky's Auto Sales, 539 A.2d 1280, 1283 (N.J. Super. App. Div. 1988)(Water Pollution Control Act is limited to violators who have discharged a pollutant into waters of the State or land from which it might flow); N.J.S.A. 58:10A-3.n ("Pollutant" means . . . rock, sand, cellar dirt, and . . . other residue discharged

---

[8] Eastern itself makes this argument, thus recognizing its validity. Doc. 55 at 29.

15

into the waters of the State. "Pollutant" includes both hazardous and nonhazardous pollutants). As Eastern has argued, "the underlying remediation was necessary to protect the environment." Doc. 47 at PA 339.

Without question, the absolute pollution exclusion applies and is fatal to Eastern's claims for defense and indemnity from plaintiff. Plaintiff's duty is to investigate claims and defend suits "seeking damages covered by the terms and conditions of this policy." Doc. 47 at PA 033. Plaintiff has no defense obligation because the pollution exclusion causes the insurance not to apply to the Spruce Run claim. David Lewis Builders, Inc. v. Mid-Continent Cas. Co., 720 F. Supp. 2d 781, 791 (N.D. Tex. 2010). The same reasons that negate the duty to defend likewise negate an possibility that plaintiff will ever have a duty to indemnify. Farmers Tex. Cty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997).

Eastern's first and second counterclaims are the mirror image of plaintiff's claims for declaratory judgment. Doc. 40 at 23-25. The third counterclaim is for breach of contract, which fails for the reasons discussed herein inasmuch as there is no coverage under the policy. Id. at 25-26. And, the fourth counterclaim is for breach of the obligation of good faith and fair dealing, i.e., bad faith. Id. at 26-31. Although Eastern

cites to New Jersey statutes in support of this counterclaim, allowing it to replead under Texas law would not salvage the claim. Where an insurer has properly denied a claim that is in fact not covered, generally there is no claim for bad faith. Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995). And, Eastern has not raised any genuine fact issue as to any act by plaintiff so extreme that it caused injury independent of the policy claim. See, e.g., Progressive Cty. Mut. Ins. Co. v. Boyd, 177 S.W.3d 919, 922 (Tex. 2005). Eastern is not entitled to any relief on its counterclaims and they will be dismissed.

VI.

Other Claims

As mentioned, supra, plaintiff's claims for relief against ACE are made moot by the court's ruling herein. Thus, the only remaining claims are the cross-claims of Eastern against ACE. Although it appears that such claims have been resolved, Doc. 57 at 4, they remain pending. By separate order, the court is amending the caption of the action to so reflect.

VII.

Order

The court ORDERS that plaintiff's motion for summary judgment be, and is hereby, granted, and that Eastern have and

17

recover nothing from plaintiff and that Eastern's claims against plaintiff be, and are hereby, dismissed.

The court further ORDERS and DECLARES that the policy does not apply to, or provide any insurance coverage for the benefit of Eastern as to, any liability, including, but not limited to, settlement, judgments, costs, charges, expenses, costs of investigations, or fees of attorneys, experts, or consultants, arising out of, or in any way related to, the pumping of rock fines into Spruce Run in or near Glen Gardner, New Jersey, in July and August 2017.

The court further ORDERS that plaintiff's claims against ACE be, and are hereby, dismissed as moot.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of plaintiff's claims in this action and the dismissal of Eastern's counterclaims against plaintiff.

SIGNED July 10, 2018.

_____
JOHN McBRYDE
United States District Judge